ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL[1]

| | | |
|---|---|---|
| OFICINA DE ÉTICA GUBERNAMENTAL DE PUERTO RICO<br><br>Recurrida<br><br>v.<br><br>JORGE I. VALENTÍN ASENCIO<br><br>Recurrente | KLRA202400641 | *Revisión Judicial* procedente de la Oficina de Ética Gubernamental de Puerto Rico<br><br>Caso Administrativo: 23-53<br><br>Sobre: Violación al Artículo 4.3, Inciso (d) de la Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico, Ley Núm. 1-2012, según enmendada |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Adames Soto y el Juez Sánchez Báez

Sánchez Báez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 25 de marzo de 2026.

Compareció el Sr. Jorge I. Valentín Asencio (en adelante, "señor Valentín Asencio" o "recurrente") mediante el recurso de revisión judicial de epígrafe. Nos solicitó la revocación de la *Resolución* emitida por la Oficina de Ética Gubernamental de Puerto Rico (en adelante, "OEG"). En el aludido dictamen, la OEG determinó que el señor Valentín Asencio incurrió en tres violaciones al Artículo 4.3 (d) de la Ley Núm. 1-2012, según enmendada, conocida como *Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico, infra* (en adelante, "Ley Núm. 1-2012") y le impuso una multa administrativa de $3,000.00 por cada infracción, para un total de $9,000.00.

[1] Mediante la Orden Administrativa OATA-2025-002 emitida el 9 de enero de 2025 se designó al Juez Isaías Sánchez Báez en sustitución de la Jueza Grisel M. Santiago Calderón.

Número Identificador
SEN2026_____

Por los fundamentos que expondremos a continuación, se **modifica** en parte la *Resolución* recurrida y, así modificada, **confirma** el resto del dictamen recurrido.

**-I-**

El 25 de abril de 2023, la OEG presentó una *Querella* Núm. 23-53 contra el señor Valentín Asencio en la cual se le imputó infracción —en tres (3) ocasiones— al Artículo 4.3(d) de la Ley Núm. 1-2012, *infra*.[2] Alegó que el señor Valentín Asencio —como autoridad nominadora de la Universidad de Puerto Rico en Carolina (en adelante, "UPR-Carolina")— otorgó tres (3) contratos de servicio profesionales con la Sra. Melysa Rodríguez Bonano (en adelante, "señora Rodríguez Bonano"), quien ya era servidora pública de UPR-Carolina, sin la previa autorización de la OEG. Por lo cual, solicitó la imposición de una multa y la restitución de $125,916.94, cantidad que fue desembolsada por concepto de los servicios profesionales prestados por la señora Rodríguez Bonano.

Por su parte, el señor Valentín Asencio instó su *Contestación a las alegaciones de la querella* mediante la cual adujo que toda contratación de la UPR pasa por un proceso de revisión por diversas dependencias del Decanato de Administración. Además, señaló que, en la medida que no obtuvo un beneficio personal o económico por la contratación de la señora Rodríguez Bonano, no procedía la restitución de $125,916.94. Asimismo, puntualizó que no tiene historial previo de violaciones a la Ley Núm. 1-2012, *infra.* Por último, alegó la defensa de prescripción, falta de jurisdiccion e incuria, ya que la OEG tramitó la querella en su contra fuera del término establecido en la Ley Núm. 1-2012.

Luego, el 11 de agosto de 2023, la OEG presentó una *Moción solicitando adjudicación sumaria[3]* en la cual enumeró diesies 16

---

[2] Apéndice del recurso, anejo 4, págs. 67-72.
[3] *Id.*, anejo 11, págs. 120-228.

hechos esenciales sobre los cuales alegadamente no existía controversia real o sustancial. Por lo que, argumentó que, solo restaba resolver un asunto de estricto derecho y no era innecesario celebrar una vista adjudicativa.

Por su parte, el señor Valentín Asencio instó su *Oposición a moción solicitando adjudicación sumaria* mediante la cual aceptó que no había controversia sustancial sobre los hechos enumerados por la OEG, excepto el hecho número 16.[4] Señaló que hay controversia sobre lo siguiente: (i) si la señora Rodríguez Bonano era servidora pública conforme el Artículo 1.2 de la Ley Núm. 1-2012, *infra;* (ii) si los contratos requerían la autorización de OEG; y (iii) las circunstancias que mediaron el proceso de contratación y el conocimiento del señor Valentín Asencio sobre ello. Asimismo, redactó 16 hechos esenciales que alegadamente fueron omitidos por la OEG.

En desacuerdo, la OEG presentó *Réplica a oposición a moción solicitando adjudicación sumaria* en la que negó la existencia de hechos en controversia.[5] En cuanto a los hechos adicionales que redactó el señor Valentín Asencio, la OEG aceptó catorce (14) y sobre los restantes dos (2) hechos indicó que no eran pertinentes a la controversia del caso.

El 29 de agosto de 2024, el Oficial Examinador sometió su informe en el cual recomendó que se encontrara al señor Valentín Asencio incurso en tres (3) violaciones al Artículo 4.3(d) de la Ley Núm. 1-2012, *infra,* y la imposición de una multa administrativa adecuada conforme a la discreción que otorga el Artículo 4.7 de la precitada ley.[6] Además, hizo constar las determinaciones de hechos siguientes:

---

[4] *Id.,* anejo 12, págs. 229-251.
[5] *Id.,* anejo 13, págs. 284-293.
[6] *Id.,* anejo 1(b), págs. 5-24.

1. El doctor Valentín Asencio fungió como rector interino de la UPR-Carolina desde el 20 de julio de 2017 hasta el 30 de junio de 2019.
2. El querellado fungió como rector en propiedad de la UPR-Carolina desde el 1 de julio de 2019 hasta el 30 de junio de 2020.
3. El doctor Valentín Asencio, como rector, constituía la autoridad nominadora de la UPR-Carolina.
4. La licenciada Rodríguez Bonano comenzó como instructora a tarea parcial, de la UPR-Carolina, el 18 de enero de 2000. Su sueldo inicia fue de $1,713 por periodo. Ocupó dicho puesto mediante renovaciones trimestrales hasta el 7 de julio de 2020.

[…]

7. El 23 de octubre de 2017, el querellado, como rector interino y autoridad nominadora de la UPR-Carolina, otorgó a la licenciada Rodríguez Bonano un *Contrato para la Prestación de Servicios Profesionales*, contrato núm. 2018-000054. Este contrato tenía vigencia desde el día de su firma hasta el 30 de noviembre de 2017.
8. El 28 de noviembre de 2017, el querellado, como rector interino y autoridad nominadora de la UPR-Carolina, suscribió una *Enmienda al Contrato para la Prestación de Servicios Profesionales*, contrato núm. 2018-000054(A), con la licenciada Rodríguez Bonano. Esta enmienda extendió la vigencia del contrato núm. 2018-000054 hasta el 28 de febrero de 2018.

[…]

12. El 26 de febrero de 2018, el querellado, como rector interino y autoridad nominadora de la UPR-Carolina, suscribió una Segunda Enmienda al Contrato de Servicios Profesionales, contrato núm. 2018-000054(B), con la licenciada Rodríguez Bonano. Esta enmienda extendió la vigencia del contrato núm. 2018-000054 hasta el 30 de junio de 2018.

[…]

16. El 1 de julio de 2018, el querellado, como rector interino y autoridad nominadora de la UPR-Carolina, otorgó un Contrato de Servicios Profesionales, contrato núm. 2019-000019, con la licenciada Rodríguez Bonano. Este contrato tuvo vigencia desde el día de su firma hasta el 30 de junio de 2019.

[…]

20. El 14 de septiembre de 2018, el querellado, como rector interino y autoridad nominadora de la UPR-Carolina, suscribió una Enmienda al Contrato de Servicios Profesionales, contrato núm. 2019-000019(A), con la licenciada Rodríguez Bonano. Este contrato enmendó la cláusula 6 del contrato núm. 2019-000019 para aumentar la cuantía máxima de $36,000.00 a $55,000.00.

[…]

26. El 26 de junio de 2019, el querellado, como rector interino y autoridad nominadora de la UPR-Carolina, otorgó un Contrato de Servicios Profesionales, contrato núm. 2020-000013, con la licenciada Rodríguez Bonano. Este contrato tuvo vigencia desde el 1 de julio de 2019 hasta el 30 de junio de 2020.

[…]

28. En todos y cada de sus nombramientos como instructora, la licenciada Rodríguez Bonano fue evaluada y recomendada al querellado por un Comité de Personal Departamental del Departamento de Ciencias Sociales y Justicia Criminal.

[…]

30. La UPR-Carolina le pagó a la licenciada Rodríguez Bonano por los contratos de servicios profesionales otorgados por el querellado, es decir, contrato núm. 2018-000054, contrato núm. 2018-000054(A), contrato núm. 2018-000054(B), contrato núm. 2019-000019, contrato núm. 2019-000019(A) y contrato núm. 2020-000013, para un total de $125,916.94.

31. Cada uno de los contratos para la prestación de servicios profesionales fue firmado por el querellado y la licenciada Rodríguez Bonano y verificado por la Oficina de Presupuesto de la UPR-Carolina para fines de la disponibilidad de fondos.

32. Mediante certificación expedida el 12 de enero de 2023 por la Lcda. Massiel Y. Hernández Tolentino, directora auxiliar del Área de Asesoramiento Jurídico y Litigación de la OEG, no obra en sus registros documento alguno relacionado con la contratación de la licenciada Rodríguez Bonano y la UPR-Carolina.[7]

Así las cosas, la OEG emitió el 27 de septiembre de 2024 —notificada el 30 de septiembre de 2024— una *Resolución* mediante la cual adoptó en su totalidad el *Informe del Oficial Examinador* y le impuso una multa administrativa de $3,000.00 por cada infracción, para un total de $9,000.00.[8]

Tras la presentación de una solicitud de reconsideración[9], la OEG dictó *Resolución en reconsideración* mediante la cual denegó la reconsideración solicitada.[10]

Inconforme, el señor Valentín Asencio acudió ante nos mediante el recurso de epígrafe y esbozó los señalamientos de error siguientes:

1. Erró la Directora Ejecutiva Interina de la OEG al adoptar el Informe del Oficial Examinador designado mediante Resolución, el cual no incluyó en sus determinaciones de hechos los siguientes hechos materiales presentados por la parte recurrente en su Oposición a Moción Solicitando Adjudicación Sumaria (Apéndice 12) y admitidos por la parte recurrida en su escrito de Réplica a Oposición a Moción Solicitando Adjudicación Sumaria (Apéndice 13).

2. Erró la Directora Ejecutiva Interina de la OEG al adoptar el Informe del Oficial Examinador designado mediante Resolución sin considerar ni resolver los planteamientos de la parte recurrente de que la querella adolece de prescripción e incuria por parte de la OEG.

3. Erró la Directora Ejecutiva Interina de la OEG al adoptar el Informe del Oficial Examinador designado mediante Resolución el cual recomienda y adjudica la querella por vía sumaria, a pesar de la existencia de hechos esenciales

---

[7] *Id.*, págs. 10-13.
[8] *Id.*, anejo 1, págs. 1-4.
[9] *Id.*, anejo 3, págs. 28-66.
[10] *Id,* anejo 2, págs. 25-27.

en controversia, los cuales requerían la celebración de una vista adjudicativa y presentación de prueba testifical para dirimirlos mediante el interrogatorio y contrainterrogatorio de testigos.

4. Erró la Directora Ejecutiva Interina de la OEG al adoptar el Informe del Oficial Examinador designado mediante Resolución y determinar que la parte recurrente incurrió en violación del inciso (d), del Articulo 4.3 de la Ley 1-2012, según enmendada.

5. Erró la Directora Ejecutiva Interina de la OEG de la OEG al imponer una multa arbitraria e irrazonable de $9,000.00, por alegada violación al inciso (d) al recurrente sin justificación válida expresada y sin que la [L]ey 1-2012 ni el Reglamento de la OEG establezcan criterios y parámetros uniformes para la determinación de las cuantías de las multas impuestas.

Por su parte, la OEG presentó su *Alegato en oposición a solicitud de revisión.*

Así pues, perfeccionado el recurso, procedemos a exponer la normativa jurídica aplicable a las controversias ante nuestra consideración.

**-II-**

**A. Ley Núm. 1-2012**

La Ley Núm. 1-2012, según enmendada, conocida como *Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico*, 3 LPRA sec. 1854 et seq. (en adelante, "Ley Núm. 1-2012") tiene el propósito de fiscalizar la conducta de los servidores públicos y penalizar a todos aquellos que transgreden la normativa ética que integra los valores del servicio público. Para efectos de la precitada legislación, se interpretará que "servidor público" es:

persona en el Gobierno que interviene en la formulación e implantación de la política pública o no, aunque desempeñe su encomienda permanente o temporalmente, con o sin remuneración. También, incluye al contratista independiente cuyo contrato equivale a un puesto o cargo, o que entre sus responsabilidades está la de intervenir directamente en la formulación e implantación de la política pública.

3 LPRA sec. 1854 (gg).

Además, establece que se reconocerá la "autoridad nominadora" como "aquel o aquellos cuya función inherente es la de nombrar, ascender, remunerar o contratar". 3 LPRA sec. 1854 (h).

En aras de reglamentar la conducta de los servidores públicos, el Artículo 4.3 (d) de la Ley Núm. 1-2012 dispone como sigue:

> (d) La autoridad nominadora no puede llevar a cabo un contrato en el que un servidor público de la agencia o un miembro de la unidad familiar, un pariente, un socio o una persona que comparta la residencia de este último tenga o haya tenido, directa o indirectamente, un interés pecuniario durante los últimos dos (2) años anteriores a su nombramiento. Esta prohibición no aplica cuando, a discreción de la Dirección Ejecutiva, medien circunstancias excepcionales que hayan sido evaluadas con anterioridad a que la autoridad nominadora contrate con el servidor público o con un miembro de la unidad familiar, un pariente, un socio o una persona que comparta la residencia de este último.

3 LPRA sec. 1857b (d) (énfasis suplido).

Incluso, el Articulo 4.7 de la precitada legislación establece que aquel que viole las prohibiciones y las disposiciones de la ley, podrá ser castigado con la imposición de multa administrativa, que no excederá de veinte mil (20,000) dólares por cada violación. 3 LPRA sec. 1857f (c).

Ahora bien, el Capítulo VI de la Ley Núm. 1-2012 reconoce los procedimientos administrativos para fiscalizar las conductas de los servidores públicos. Por un lado, el Artículo 7.1 de la precitada ley dispone como sigue:

> (a) Cualquier persona puede solicitar de la Oficina que se inicie una investigación bajo las disposiciones de esta Ley. El planteamiento puede presentarse por cualquier medio, incluso de forma anónima. También, la Oficina puede motu proprio iniciar una investigación.
>
> (b) Dentro de los noventa días siguientes a la fecha de presentación del planteamiento, la Oficina realizará una investigación preliminar. **Una vez culminada la investigación preliminar, si la Oficina entiende que procede efectuar una investigación exhaustiva, debe concluirla dentro del término de un año.** Estos términos son de cumplimiento estricto. Si existe justa causa, la Oficina prorrogará estos términos hasta noventa días o un año, respectivamente.

3 LPRA sec. 1860 (a) y (b) (énfasis suplido).

Además, el Artículo 7.2 establece que concluido el procedimiento anterior y si la Oficina entiende que se violó alguna disposición de ley, esta podrá presentar una querella que llevará un procedimiento de adjudicación conforme a la Ley Núm. 38-2017, según enmendada, conocida como *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (en adelante, "LPAU"). 3 LPRA sec. 1860a.

Por su parte, la sección 3.7 de la LPAU faculta a las agencias administrativas a adjudicar los asuntos ante su consideración por medio de una resolución sumaria. 3 LPRA sec. 9647(b). Esto es, incorpora un mecanismo para agilizar el proceso adjudicativo en los casos en los que no estén presentes hechos materiales en controversia. *OCS v. Universal*, 187 DPR 164, 177 (2012). Por lo que, las agencias pueden adjudicar sin celebrar una vista cuando no exista controversia sobre los hechos y su determinación este sustentada con evidencia documental del expediente. *Id.* Sin embargo, la LPAU expone que las agencias administrativas no podrán dictar resoluciones sumarias si: (1) existen hechos materiales o esenciales controvertidos; (2) hay alegaciones afirmativas en la querella que no han sido refutadas; (3) surge de los documentos que se acompañan con la moción una controversia real sobre algún hecho material y esencial; y (4) como cuestión de derecho no procede. 3 LPRA sec. 9647(b).

Por último, el Artículo 7.3 de la Ley Núm. 1-2012 dispone que "[t]odo servidor público que resulte afectado en un proceso adversativo llevado a cabo en la Oficina que dé por terminado el asunto, tendrá derecho a presentar la correspondiente revisión ante el Tribunal de Apelaciones", conforme a la LPAU. 3 LPRA sec. 1860b.

**B. Revisión administrativa**

La Ley Núm. 38-2017, según enmendada, conocida como "Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto

Rico" (en adelante, "LPAU") dispone que las decisiones administrativas pueden ser revisadas por el Tribunal de Apelaciones. 3 LPRA sec. 9671. Como cuestión de derecho, la revisión judicial será sobre las decisiones, órdenes y resoluciones finales de organismos o agencias administrativas. 3 LPRA sec. 9676. El propósito de tal disposición consiste en delimitar la discreción de los foros administrativos para asegurar que estos ejerzan sus funciones razonablemente y conforme a la ley. *Hernández Feliciano v. Mun. Quebradillas,* 211 DPR 99, 113-114 (2023).

En cuanto a las determinaciones de hechos formuladas por las agencias administrativas, la LPAU establece que serán sostenidas si están basadas en evidencia sustancial contenida en el expediente administrativo. 3 LPRA sec. 9675. Entendiéndose que la evidencia sustancial "es aquella prueba relevante que 'una mente razonable podría aceptar como adecuada para sostener una conclusión'". *Capó Cruz v. Jta. Planificación et al.*, 204 DPR 581, 591 (2020) citando a *Rebollo v. Yiyi Motors,* 161 DPR 69, 77 (2004). Por consiguiente, existe una presunción de legalidad y corrección que reviste a las determinaciones de hechos elaboradas por las agencias administrativas, salvo la parte que las impugna no produzca evidencia suficiente para derrotarlas. *Hernández Feliciano v. Mun. Quebradillas,* supra, pág. 114; *OEG v. Martínez Giraud,* 210 DPR 79, 88-89 (2022); *Capó Cruz v. Jta. Planificación et al.*, supra, pág. 591; *Graciani Rodríguez v. Garaje Isla Verde*, 202 DPR 117, 128 (2019). En otras palabras, la parte que impugna las determinaciones de hechos de una agencia tiene que demostrar que el dictamen administrativo no está justificado por una evaluación justa del peso de la prueba que tuvo ante su consideración. *Rebollo v. Yiyi Motors,* supra, pág. 77. De lo contrario, los tribunales apelativos deben conceder gran consideración y deferencia a las determinaciones de las agencias debido a su vasta experiencia y

conocimiento especializado. *Hernández Feliciano v. Mun. Quebradillas,* supra, pág. 114.

De otro lado, la LPAU sostiene que las conclusiones de derecho realizadas por los foros administrativos serán revisables en todos sus aspectos. 3 LPRA sec. 9675. Esto es, el tribunal revisor no tiene que otorgarle deferencia a las conclusiones o interpretaciones de derecho formuladas por las agencias administrativas. *Vázquez et al. v. DACo,* 2025 TSPR 56, pág. 28; 216 DPR ___ (2025). Sobre esto, el tribunal revisor deberá ejercer un juicio independiente para determinar si la actuación de la agencia administrativa está dentro del marco de sus facultades estatutarias. *Íd.* Por ello, los tribunales tienen que armonizar, siempre que sea posible, todos los estatutos y reglamentos administrativos involucrados para la solución justa de la controversia, de modo que se obtenga un resultado sensato, lógico y razonable. *Moreno Lorenzo y otros v. Depto. Fam.*, 207 DPR 833, 843 (2021).

Además, el tribunal revisor no dará deferencia a los procedimientos administrativos si al examinar el dictamen recurrido determina que: (1) la decisión administrativa no está basada en evidencia sustancial; (2) la agencia erró en la aplicación de la ley; (3) el organismo administrativo actuó de manera irrazonable, arbitraria o ilegalmente; o (4) su actuación lesiona derechos constitucionales fundamentales. *Hernández Feliciano v. Mun. Quebradillas,* supra, pág. 114. Así pues, la revisión administrativa está limitada a determinar si hay evidencia sustancial en el expediente para sostener la conclusión de la agencia o si esta actuó de forma arbitraria, caprichosa o ilegal. *Moreno Lorenzo y otros v. Depto. Fam.*, supra, 839.

En síntesis, la LPAU establece que el tribunal revisor se ceñirá a evaluar lo siguiente: (i) si el remedio concedido fue apropiado; (ii) si las determinaciones de hecho están sostenidas por evidencia

sustancial que obre en el expediente administrativo; y (iii) si se sostienen las conclusiones de derecho realizadas por la agencia. 3 LPRA sec. 9675.

Discutido el derecho aplicable, este Tribunal se encuentra en posición para resolver las controversias señaladas en el recurso de epígrafe.

**-III-**

En el caso de epígrafe, el apelante esbozó cinco (5) planteamientos de error. De entrada, examinaremos el segundo error señalado. El apelante alega que la querella instada en su contra prescribió al recibir su notificación tres (3) años luego de los alegados hechos, por lo que la OEG incidió en incuria.

Ciertamente, del expediente se desprende que la OEG instó una querella en contra del señor Valentín Asencio por la contratación de servicios profesionales otorgados desde el año 2017 al 2019. Además, consta en el expediente que la mencionada querella fue presentada el 25 de abril de 2023. Sin embargo, tras revisar minuciosamente la Ley Núm. 1-2012 no hemos encontrado ninguna disposición que incorpore algún término prescriptivo para la presentación de querellas ante la OEG. El apelante, por su parte, lo que argumenta es que el Artículo 7.1 de la Ley Núm. 1-2012 establece un término máximo de dos (2) para tramitar una querella.

Conforme expusimos en el acápite II de esta *Sentencia*, el Artículo 7.1 de la Ley Núm. 1-2012 permite que la OEG realice una investigación preliminar dentro de noventa (90) días tras su solicitud y, una vez concluida, puede realizar una investigación exhaustiva dentro un (1) año. La propia disposición reconoce que ambos términos son de estricto cumplimiento que, mediando justa causa, pueden ser prorrogados. No obstante, nótese que estos términos son aplicables a la etapa investigativa que realiza la OEG **antes** de la presentación de una querella. Tan es así que, el Artículo 7.2 dispone

que "**una vez concluya** la investigación del Artículo 7.1 y la [OEG] entienda que se ha violado alguna disposición...presentará una querella". 3 LPRA sec. 1860a. Además, el apelante tampoco ha citado alguna otra disposición que fundamente su planteamiento, por lo que no nos ha persuadido para concluir lo contrario.

Así pues, al considerar lo anterior y ante la falta de disposición legal que establezca un término prescriptivo para la presentación de querellas en la OEG, concluimos que la querella instada contra el apelante no estaba prescrita. Tampoco nos persuade el argumento de que en el presente caso exista incuria. Por tanto, no se cometió el segundo señalamiento de error.

Ahora, procedemos a analizar el primer y tercer señalamiento de error. En síntesis, el apelante plantea que la OEG erró al adoptar el *Informe del Oficial Examinador* por: (1) no incluir las determinaciones de hechos propuestas en la *Oposición a moción solicitando adjudicación sumaria*; y (2) resolver por vía sumaria aun cuando existen hechos esenciales en controversia.

Al cumplir con nuestro deber de revisar de *novo* las mociones de adjudicación sumaria, determinamos que ambas partes cumplieron con los requisitos establecidos en el Reglamento Núm. 9641. Por un lado, observamos que la OEG incluyó en su solicitud una relación enumerada de todos los hechos esenciales y pertinentes sobre los que alegaron eran incontrovertidos junto a su evidencia en apoyo. De otra parte, el apelante instó sus respectivas réplicas y oposiciones a la solicitud, en las cuales mostró su posición sobre cada hecho propuesto e incluso nos percatamos que esbozó una relación de hechos adicionales con evidencia documental.

Luego de ejercer nuestra función revisora, colegimos que las determinaciones de hechos formuladas por el Oficial Examinador de la OEG están basadas en evidencia sustancial y son suficientes para adjudicar si, en efecto, el apelante infringió el Artículo 4.3 (d) de la

Ley Núm. 1-2012 que se le imputó en la Querella. Por lo que, advertimos que en el presente litigio no existen controversias de hechos que impidan la resolución sumaria de la controversia. Asimismo, observamos que el apelante no nos ha colocado en posición para determinar que los hechos formulados por la agencia no están justificados por la justa evaluación de la prueba que tuvo ante sí. Pues, debemos recordar que estas determinaciones de hechos tienen una presuncion de legalidad y corrección, las cuales no fueron impugnadas por el apelante con evidencia suficiente para derrotarlas. Así pues, debemos conceder gran consideración y deferencia a la agencia en cuanto a sus determinaciones de hechos, debido a su vasta experiencia y conocimiento especializado. Por tanto, no se cometió el primer y tercer señalamiento de error.

Por último, atenderemos el cuarto y quinto señalamiento de error. En esencia, el apelante sostiene que no violó el Artículo 4.3(d) de la Ley Núm. 1-2012 y, por tanto, que la OEG erró al imponer una multa arbitraria e irrazonable.

De acuerdo con la normativa de derecho que explicamos, el Artículo 4.3(d) de la Ley Núm. 1-2012 prohíbe que una autoridad nominadora otorgue un contrato con un servidor público que tenga o haya tenido algún interés pecuniario. 3 LPRA sec. 1857b (d). Entendiéndose, por un lado, que la "autoridad nominadora" es aquella que tiene la función de nombrar o contratar, mientras que, el "servidor público" es aquel que interviene en formular e implantar la política pública en el gobierno.

Al considerar lo anterior y evaluar el expediente de autos, no encontramos que la OEG haya errado en la aplicación de la norma jurídica pertinente, de manera tal, que nos sea forzoso revocarle. Consideramos que los fundamentos por lo que alcanzamos esta conclusión están muy bien enunciados en el expediente de epígrafe. Obsérvese que, en esencia, el *Informe del Oficial Examinador*

resumió la infracción que cometió el apelante de la manera siguiente:

> [...] la evidencia que obra en el expediente oficial demuestra, de manera clara, robusta y convincente, todos los elementos de la conducta imputada en la querella de autos. Es decir: (1) el querellado, como autoridad nominadora; (2) suscribió unos contratos; (3) en el que una servidora pública, la licenciada Rodríguez Bonano, tenía un interés pecuniario directo en dichos contratos, pues era la contratista; y (4) sin haber solicitado una autorización al director ejecutivo de la OEG previo a los otorgamientos."

Véase, apéndice del recurso, anejo 1(b), págs. 22-23.

Nótese, además, que ambas partes en sus respectivas mociones a favor y en oposición de la resolución sumaria, aceptaron que no había controversia de hechos en cuanto a: (1) el apelante era la autoridad nominadora de la UPR-Carolina; (2) el apelante suscribió tres contratos y sus enmiendas con la señora Rodríguez Bonano para la prestación de sus servicios profesionales; (3) la señora Rodríguez Bonano fungía como instructora a tiempo parcial en la UPR-Carolina antes y durante sus nombramientos a través de los referidos contratos. Véase, apéndice del recurso, anejos 11 y 12, págs. 125-129 y 232.

En vista de lo anterior, tiene importancia destacar que la señora Rodríguez Bonano no era un mero contratista, sino que los documentos de la Oficina de Recursos Humanos de la UPR-Carolina revelaron que contaba con un nombramiento como instructora y ese puesto, aunque a tiempo parcial, estaba clasificado como docente. Así pues, nos parece que lo anterior es suficiente y sustancial para que la OEG determinara que el apelante infringió con la prohibición del Artículo 4.3 (d) de la Ley Núm. 1-2012. Por lo que, nos resulta forzoso concluir que no se cometió el cuarto señalamiento de error.

Ahora bien, en cuanto al quinto señalamiento error, somos del criterio que la OEG abusó de su discreción al imponer una multa de 3,000.00 por cada infracción, para un total de $9,000.00. Al considerar que, en el expediente, no hay alegaciones de que no se

rindieron los servicios contratados por parte de la señora Rodríguez Bonano y que no surge que el apelante tenga un historial de infracciones a la Ley Núm. 1-2012 ni consta prueba alguna que la presente infracción al Artículo 4.3(d) sea una conducta reiterada, nos parece excesiva la cuantía impuesta en la multa administrativa. Ello, máxime cuando el apelante actualmente ni siquiera ocupa el puesto de rector de la UPR-Carolina, sino que este se encuentra acogido a los beneficios de jubilación por 30 años de servicio bajo el Sistema de Retiro de la Universidad de Puerto Rico. En consecuencia, se modifica el dictamen recurrido para que la cuantía de la multa administrativa sea de $100.00 por cada infracción al Artículo 4.3 (d) de la Ley Núm. 1-2012, para un total de $300.

**-IV-**

Por los fundamentos expuestos previamente, los cuales se hacen formar parte de esta *Sentencia,* se **modifica en parte** la *Resolución* recurrida para que la cuantía de la multa administrativa sea de $100.00 por cada infracción al Artículo 4.3 (d) de la Ley Núm. 1-2012, para un total de $300. Así modificada, se **confirma el resto** del dictamen recurrido.

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones. El Juez Adames Soto concurre sin voto escrito.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones